UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                        :

JOSE ROSARIO SERRANO,             :

                                :

                Plaintiff,        :

                                :          25-cv-00881 (LJL)

        -v-                   :

                                :        OPINION AND ORDER

FEFA EXPRESS INC., et al.,         :

                                :

                Defendants.    :

                                :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/10/2026

LEWIS J. LIMAN, United States District Judge:

Defendants Fefa Express Inc. ("Fefa") and Ferdi Haciali ("Haciali," and with Fefa, "Defendants") move, pursuant to Federal Rule of Civil Procedure 56, for an order granting them summary judgment and dismissing the complaint of Plaintiff Jose Rosario Serrano ("Serrano" or "Plaintiff"). Dkt. No. 25. For the reasons that follow, the motion is denied.[1]

## BACKGROUND

This case involves an alleged vehicle collision that occurred on the evening of March 13, 2023, on the Cross Bronx Expressway in the Bronx, New York. Dkt. No. 34 ("Statement of Undisputed Facts" or "SUF") ¶¶ 1–2. At the time, Plaintiff was driving a 2006 Honda Odyssey southbound on the Cross Bronx Expressway. *Id.* ¶¶ 2, 19. Haciali was operating a 2001 Volvo tractor-trailer owned by Fefa and was also driving southbound on the Cross Bronx Expressway. *Id.* ¶ 3. Non-party Elizabeth Gomez ("Gomez") was in the vehicle with Plaintiff. *Id.* ¶ 18. Plaintiff claims that he was injured and his vehicle was damaged when it was side-swiped by the

---

[1] Serrano moved for leave to file a cross-motion for summary judgment out of time. Dkt. No. 30. The Court denied the request. Dkt. No. 31. Serrano's request for the Court to grant summary judgment in favor of the Plaintiff on the issue of liability, Dkt. No. 33 at 6, is therefore denied as untimely.

tractor-trailer being driven by Haciali.  Haciali has testified that he was never in an accident and never felt or heard any impact.  *Id.* ¶ 47.

## PROCEDURAL HISTORY

This case was initiated by summons and complaint filed in New York State Supreme Court, Bronx County, on August 29, 2024.  Dkt. No. 1 ¶ 2; Dkt. No. 1-1.  On January 30, 2025, after Plaintiff served a bill of particulars indicating he was a resident of Bronx County and responded to Defendants' Demand for Damages indicating that Plaintiff was seeking an amount of damages in excess of available policy limits, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441, invoking diversity jurisdiction under 28 U.S.C. § 1332.  Dkt. No. 1.  That same day, Defendants also served and filed a Jury Demand.  Dkt. No. 4.

Defendants filed this motion on March 19, 2026.  Dkt. No. 25.  Defendants also filed a memorandum of law in support of the motion, a Local Rule 56.1 statement, and the declaration of Bryan T. Schwartz attaching exhibits.  Dkt. Nos. 26–28.  On April 6, 2026, Plaintiff filed his memorandum of law in opposition to the motion for summary judgment, a statement in opposition to Defendants' Rule 56.1 statement, and the declaration of Anthony J. Forzano in opposition to the motion for summary judgment and attaching exhibits.  Dkt. Nos. 32–34.[2] Defendants filed a reply memorandum of law in further support of the motion on April 9, 2026, with an additional declaration of Bryan T. Schwartz.  Dkt. Nos. 35–36.

---

[2] By order of February 11, 2026, the Court set a deadline of March 20, 2026 for motions for summary judgment and directed that responses to those motions were to be filed by March 27, 2026 and replies by April 2, 2026.  Dkt. No. 22.  Plaintiff failed to file a timely response to Defendants' motion for summary judgment.  Instead, on April 2, 2026, Plaintiff filed a letter motion for an extension of time.  Dkt. No. 30.  The Court granted that motion in part and denied it in part.  The Court extended Plaintiff's time to respond to the motion to April 6, 2026, and gave Defendants until April 10, 2026 to reply.  Dkt. No. 31.

## DISCUSSION

Defendants argue that they are entitled to summary judgment on two independent grounds: (1) the undisputed evidence establishes that Defendants' vehicle did not strike Plaintiff's vehicle in the rear; and (2) Plaintiff has not sustained a serious injury under the 90/180 category of Insurance Law 5102(d).

## I.      Standards for Summary Judgment

Summary judgment is appropriate under the Federal Rules of Civil Procedure where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Id.* at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor." *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

A party opposing summary judgment must present evidence "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Id.* at 55–56. In particular, information that constitutes hearsay cannot

3

create a genuine issue of material fact.  "Hearsay is any out-of-court statement offered to prove the truth of the matter asserted in the statement."  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013).

Local Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York prescribes the manner and method in which a party is to present undisputed issues of fact to the Court.  The moving party must annex to its notice of motion "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Rule 56.1(a). The party opposing the motion for summary judgment is required to "include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(b).  The statements "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Rule 56.1(d).  The consequences of failure to follow these rules can be severe.  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Rule 56.1(c).

Thus, a Local Rule 56.1 statement "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  If portions of a Local Rule 56.1 counterstatement cite to no admissible evidence in support of its denials, the Court is instructed to disregard those portions and deem the factual

statements in the original Local Rule 56.1 statements admitted.  *See, e.g.*, *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 243 (S.D.N.Y. 2013) (holding that denials that are not supported by citations to admissible record evidence are to be disregarded). When the non-moving party in certain instances fails to cite to any record evidence for its denials, the Court accepts the moving party's recitation of those facts in its Local Rule 56.1 statement as undisputed.  *See Colton v. N.Y. Div. of State Pol.*, 2017 WL 5508911, at *2 (N.D.N.Y. Feb. 8, 2017) ("The failure to properly controvert a supported statement of fact by pointing to admissible evidence contravening the movant's evidence results in the movant's statement being deemed admitted."); *Knight v. N.Y.C.H.A.*, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007) ("Pursuant to Local Civil Rule 56.1 Defendant's statements are deemed to be admitted where Plaintiff has failed to specifically controvert them with citations to the record.").

## II.    Defendants' Motion for Summary Judgment on Liability

Defendants' motion for summary judgment is based on the following syllogism: (1) Plaintiff initially claimed that he was injured when his vehicle was rear-ended by Defendants' vehicle; (2) the undisputed evidence is that Haciali's vehicle did not hit Plaintiff's vehicle in the rear; (3) therefore, Defendants are entitled to summary judgment.  Defendants' argument is based on a faulty premise.

Plaintiff was deposed on December 4, 2025.  Dkt. No. 26-7.  At the deposition, he testified that the collision occurred when he was in the middle lane, Haciali was in the right lane, and Haciali "came in my lane and the back of his truck hit the side of my car."  Dkt. No. 26-8 at 34:10–13.  Plaintiff further testified that "[w]hen he hit me the window closed and I lost control and slid over to the right side and hit the wall."  *Id.* at 34:22–24.  Plaintiff also testified that before changing lanes from the right lane to the center lane, Haciali did not put his left turn signal on or provide any advanced warning that the tractor-trailer was changing from the right

lane to the center lane.  *Id.* at 35:17–25.  Plaintiff gave similar testimony in his examination

under oath with his insurance company on August 4, 2023, prior to the filing of this lawsuit.

Dkt. No. 32-2.  Plaintiff testified that he was in the middle lane when the back part of the

tractor-trailer hit the passenger side of his car.  *Id.* at 32:12–35:5.  Plaintiff's car then hit the

median on the passenger side and stopped before Plaintiff then resumed driving and caught up to

the truck that was stopped in traffic.  *Id.* at 39:2–40:20.  Plaintiff's evidence is further

corroborated by photographs from the scene of the collision that show damage to the passenger

side consistent with Plaintiff's description of the collision.  Dkt. No. 32-3.

Plaintiff's testimony is sufficient to create a genuine issue of fact.  "[I]t is undoubtedly

the duty of district courts not to weigh the credibility of the parties at the summary judgment

stage." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).  That rule can be pierced,

and summary judgment granted in favor of the moving party, "in the rare circumstance where the

plaintiff relies almost exclusively on his own testimony, much of which is contradictory and

incomplete." *Id.*  In this case, however, Plaintiff's testimony is complete and not contradictory.

Plaintiff testified consistently that the collision was caused when his car was in the middle lane

and Defendants' vehicle entered the middle lane from the right lane without signaling.  There

clearly was some sort of collision.  The passenger window of Plaintiff's vehicle did not collapse

of its own force.  Whether it was Defendants' vehicle that collided with Plaintiff's car and

caused the damage is an issue of fact for the jury.

Defendants rely on New York's feigned-issue-of-fact doctrine to assert that Plaintiff's

verified interrogatory responses and his answer to a state court complaint filed by Gomez in a

separate action, as well as statements reflected in a police report, render Plaintiff's testimony

inadmissible.  That reliance is unavailing.

6

New York's feigned-issue-of-fact doctrine permits a court to disregard statements in an affidavit submitted in opposition to summary judgment. "The typical example is a witness who testifies at a deposition and then submits an affidavit, usually in opposition to a summary judgment motion. Where the affidavit directly contradicts the witness' deposition testimony, the affidavit is merely 'feigned' and is, therefore, disregarded." "The 'Feigned Issue' Rule: Ripe for a Legislative Fix?" ALM Media, Apr. 23, 2019, *available at* https://www.law.com/newyorklawjournal/2019/04/23/the-feigned-issue-rule-ripe-for-a-legislative-fix/?slreturn=20260410134149 (last accessed Apr. 10, 2026); *see Semple v. Sterling Ests., LLC*, 751 N.Y.S.2d 306, 307 (2d Dep't 2002) (disregarding affidavit that was submitted in opposition to summary judgment and that contradicted affiant's deposition testimony because it "raised feigned factual issues designed to avoid the consequences of his deposition testimony"); *Marchese v. Skenderi*, 856 N.Y.S.2d 680, 681 (2d Dep't 2008) ("The plaintiff's affidavit . . . raised only feigned issues of fact intended solely to avoid the consequences of his prior admission that the snow had started falling before the accident"); *Nieves v. JHH Transp., LLC*, 836 N.Y.S.2d 697, 698 (2d Dep't 2007) (disregarding affidavit submitted in opposition to summary judgment motion that contradicted not only police report but also the affiant's prior deposition testimony); *McFadden v. Village of Ossining*, 854 N.Y.S.2d 141, 143 (2d Dep't 2008) (disregarding averment in the plaintiff's affidavit in opposition to summary judgment that was inconsistent with deposition testimony); *Karwowski v. N.Y.C. Transit Auth.*, 844 N.Y.S.2d 96, 97 (2d Dep't 2007) ("To the extent that the plaintiff's affidavit submitted in opposition to the defendant's motion asserted that the cause of his fall was a wet condition on the subway stairs, it presented a feigned issue of fact designed to avoid the consequences of his earlier deposition testimony, and thus was insufficient to defeat the defendant's motion."). The doctrine is not

7

applied where an affidavit merely contradicts other evidence in the record. *Karst v. W.P. Carey Inc.*, 69 N.Y.S.3d 272, 275 (1st Dep't 2018).

The New York State feigned-issue-of-fact doctrine thus resembles the sham-affidavit doctrine of federal law. That doctrine provides that a party "who has been examined at length on deposition" may not "raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony," as such conduct would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (citation omitted). "Its logic is that the summary judgment process is compromised where a party, after having been examined on an issue and in that examination setting forth one version of facts, contradicts his own testimony in an affidavit or declaration submitted only after discovery is closed and in response to the other side's motion for summary judgment." *Savarese v. City of New York*, 547 F. Supp. 3d 305, 328 (S.D.N.Y. 2021); *see Brown v. City of New York*, 2023 WL 4548339, at *8 (S.D.N.Y. July 14, 2023); *see also Rys v. Davis*, 2026 WL 904990, at *1 (2d Cir. Apr. 2, 2026) (affirming finding of a sham affidavit where there were "unequivocal[,] inescapable, [and] unexplained contradictions between Rys's deposition testimony and the declaration she submitted after Defendants moved for summary judgment").

The evidence that Defendants rely upon does not implicate the sham-affidavit doctrine or preclude Plaintiff from presenting his case. Plaintiff's interrogatory response constitutes an evidentiary admission. *See Bell v. A-Leet Leasing Corp.*, 863 F.2d 257, 259 (2d Cir. 1988) ("When there is conflict between answers in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weigh all of the answers and resolve the conflict." (internal quotation marks and citation omitted)). They are not judicial admissions. *See, e.g.*, *Great Am. Ins. Co. of N.Y. v. Summit Exterior Works, LLC*, 2012

8

WL 459885, at *4 (D. Conn. Feb. 13, 2012) ("[T]estimony at depositions constitutes evidentiary admissions that should be submitted to the jury for consideration, rather than judicial admissions that act as concessions and remove a fact from contention." (internal quotation marks and citation omitted)).[3]  So too Plaintiff's answer to Gomez's complaint is, at most, an evidentiary admission.[4]  *See J.B. Plumbing & Heating of Va., Inc. v. Yellowstone Cap. LLC*, 2022 WL 4585423, at *8 (S.D.N.Y. Sept. 29, 2022) (a complaint filed in a different court "is not a judicial admission" but "the Court may take judicial notice of it").  It is not preclusive in that case, much less in this one.  *See Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 (S.D.N.Y. 2004) ("[T]he general rule seems to be that a judicial admission only binds the party that makes it in the action in which it is made, not 'in separate and subsequent cases.'"

---

[3] Some district courts in this Circuit have determined that interrogatory responses are binding judicial admissions.  *See, e.g.*, *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 390 (N.D.N.Y. 2011) ("The Second Circuit has not ruled on the issue of whether interrogatory responses are binding judicial admissions but several district courts have determined they are." (collecting cases)); *H. Daya Int'l, Co., Ltd. v. Do Denim LLC*, 2022 WL 974382, at *11 (S.D.N.Y. Mar. 31, 2022) ("Facts admitted by a party, such as interrogatory responses, are judicial admissions that bind a party throughout litigation.").  In *Bell*, the Second Circuit determined that erroneous answers to interrogatories were evidentiary admissions and that the finder of fact must resolve any conflict between those answers and other evidence at trial.  863 F.2d at 259.  Interrogatory answers are thus not judicial admissions, which are "not evidence at all" and instead "dispens[e] wholly with the need for proof of the fact."  *Chao v. Int'l Broth. of Indus. Workers Health & Welfare Fund*, 97 F. Supp. 3d 268, 285 (E.D.N.Y. Mar. 31, 2015) (quoting *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009)).  In any event, a judicial admission "must be a 'clear and unambiguous admission of fact.'"  *Id.* (quoting *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984)).  Plaintiff's interrogatory responses were internally contradictory and contained obvious errors, *see* Dkt. No. 33 at 18, rendering them far from clear and unambiguous statements of fact.

[4] Moreover, Plaintiff's answer to the complaint in the other action did not specifically affirm the allegation in Gomez's complaint that the accident was a rear-end collision.  It failed to address the allegation.  *See* Dkt. No. 26-18 (failing to list the allegations in paragraph 46 as among those Plaintiff denied or admitted).  Though "[t]he failure to deny an allegation in the complaint constitutes an admission to the truth of that allegation," *Maplewood, Inc. v. Wood*, 801 N.Y.S.2d 60, 61 (2d Dep't 2005), such an omission cannot form the basis for denying summary judgment in a different action.

9

(quoting *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968))).  In other words, Plaintiff's statements in his interrogatory responses and in different litigation do not remove issues of fact from contention; rather, they create conflicts poised for resolution by a jury.  Moreover, Plaintiff's deposition testimony and examination under oath, which Defendants characterize as "feigned," were not made in the form of a "sham affidavit" created after the close of discovery and solely in response to a motion for summary judgment.  Plaintiff's examination under oath was made before he commenced this litigation and his deposition was taken in the midst of fact discovery.  Dkt. Nos. 26-7, 32-2.  Whether Plaintiff's testimony regarding the accident should be credited is an issue for the jury and not for the Court.  *See Butler v. Gonzalez*, 2010 WL 3398150, at *10 (S.D.N.Y. Aug. 26, 2010) (inconsistency between pleadings and deposition testimony "does not render [Plaintiff's] testimony incredible.  Defendants may find the inconsistency useful for impeachment purposes at trial, but it is not grounds for granting them summary judgment.").

Neither the police report nor dashboard camera video alter this analysis.  As to the police report, Defendants argue that it removes any question of fact because it reports that Plaintiff told the officer that his car was hit at the rear.  Dkt. No. 27 at 8, 17.  Plaintiff notes that the report was taken by a police officer who did not speak Spanish and who did not use the interpretation language line available to him, even though Plaintiff is a native Spanish speaker with limited English proficiency.[5]  Dkt. No. 33 at 9–10.  The police officer testified that the report contains a "summary" that is "paraphrasing" of what was told to him.  Dkt. No. 26-16 at 30:16–31:8.  That

---

[5] Defendants contest Plaintiff's argument regarding his limited English proficiency due to the affidavit submitted in opposition to the motion for summary judgment, which is written in English and includes no indications that it was translated from Spanish.  Dkt. No. 35 at 10 (citing to Plaintiff's affidavit at Dkt. No. 32-1).  The affidavit provides grounds for impeachment.  It does not eliminate any genuine issues of material fact.

the report contradicts Plaintiff's deposition testimony does not render Plaintiff's testimony a sham.

The dashboard camera video similarly does not support Defendants' claim that Plaintiff's testimony regarding the accident is feigned. The video depicts Haciali's view from the front of the truck. Dkt. No. 26-14. Defendants assert that the video eliminates any issue of fact because it does not depict a rear-end collision and Plaintiff could not identify where in the video the collision occurred. Dkt. No. 27 at 19. This argument is predicated on the notion that Plaintiff is limited to the claim that his car was rear-ended by Defendants' vehicle. Neither Plaintiff's complaint nor his verified bill of particulars so limited his claim. Dkt. No. 1-1, 1-3. To the contrary, the bill of particulars asserts a claim of negligence based, *inter alia*, on allegations that Defendants "failed to use the proper signals or signaling devices; failed to maintain a proper lookout, and failed to be alert; . . . negligently merged lanes; failed to yield for vehicles with the right of way prior to merging into a traffic lane." Dkt. No. 11-3 ¶ 5. To the extent Defendants argue that Plaintiff limited his theory of negligence to a rear-end collision by his response to interrogatories, a party is not bound to the theory of negligence presented in response to an interrogatory. *See* 8B Wright & Miller's Federal Practice & Procedure § 2181 (3d ed. 2026) ("Interrogatories often must be answered early in the case before a party has completed its investigation and before it has a full understanding of the case. Invariably holding parties to that early understanding would be quite wrong."). In any event, the response to interrogatory eleven asserts varied theories of negligence not premised on a rear-end collision, including that Haciali "attempted an unsafe lane change[;] . . . changed lanes without signaling; changed lanes without looking to see if any vehicles were in said lane." Dkt. No. 26-6 ¶ 11. Absent Defendants' assumption that Plaintiff may only argue that he was rear-ended, Plaintiff's inability to identify

11

when the collision took place in the video does not eliminate any issues of fact. Plaintiff stated that he could not identify the collision on the video "[b]ecause it looks blurry" and "[he] was never in front of truck," statements which are consistent with a side-swipe collision. Dkt. No. 26-8 at 53:23, 54:9.

That Plaintiff's testimony of how the accident occurred contradicts the police report and his interrogatories presents factual conflicts and issues of credibility appropriately reserved for the jury's consideration; the testimony is not so baseless as to eliminate any genuine dispute of fact. This is not the case where "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint." *Jeffreys*, 426 F.3d at 555 (cleaned up). Defendants' motion for summary judgment as to liability is thus denied.

### III.    Defendants' Motion for Summary Judgment on the New York No-Fault Insurance Law

Defendants also argue that Plaintiff cannot show that he suffered a "serious injury" within the meaning of the New York no-fault insurance scheme and that, accordingly, they are entitled to summary judgment. Dkt. No. 27 at 21.

Under the "no-fault insurance" scheme, every car owner must carry automobile insurance which will compensate injured parties for "basic economic loss" resulting from the operation of the vehicle within New York State, regardless of which party was fault. *Pommells v. Perez*, 830 N.E.2d 278, 280 (N.Y. 2005); *see also* N.Y. Ins. Law §§ 5102(a), 5103. The law, however, prohibits injured parties from maintaining an action against a driver unless the injured party suffered a "serious injury." N.Y. Ins. Law § 5104(a). Under Section 5104 of the New York Insurance Law, a "covered person" who has not sustained a "serious injury" as defined in Section 5102(d) cannot recover against another covered person for non-economic loss. *See Goodkin v. United States*, 773 F.2d 19, 22 (2d Cir. 1985). Non-economic loss is defined as "pain

and suffering and similar non-monetary detriment." N.Y. Ins. Law § 5102(c). Thus, a plaintiff may not bring suit for non-economic loss arising from the negligent operation of a motor vehicle unless she shows a "serious injury." *See, e.g.*, *Polanco*, 2020 WL 6504554, at \*12; *Satterfield v. Maldonado*, 127 F. Supp. 3d 177, 190 (S.D.N.Y. 2015) (citing N.Y. Ins. Law §§ 5102, 5104). "[T]he 'legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries.'" *Toure v. Avis Rent A Car Sys., Inc.*, 774 N.E.2d 1197, 1199 (N.Y. 2002) (quoting *Dufel v. Green*, 647 N.E.2d 105, 107 (N.Y. 1995)).

"Serious injury" is defined under Section 5102(d) as:

a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). In order to satisfy any of the categories of a serious injury, the plaintiff must present "objective proof" of a qualifying injury based on competent medical evidence. *Toure*, 774 N.E.2d at 1199. "[S]ubjective complaints alone are not sufficient." *Id.*

The question whether the evidence would support a jury finding of serious injury is one of law for the Court. *See Licari v. Elliott*, 441 N.E.2d 1088, 1092 (N.Y. 1982). New York employs a burden-shifting framework. *See Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010). As explained by the Second Circuit:

On summary judgment, a defendant must establish a prima facie case that plaintiff did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). In support of its argument that there is no such serious injury, defendant may rely on the unsworn reports by plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits. Once a defendant's burden is met, the plaintiff is then required to establish a prima facie case that he sustained a

> serious injury.  For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians.

*Id.* (quoting *Barth v. Harris*, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001)); *see also*

*Yacoubou v. Tex-Q Express Inc.*, 2025 WL 2550713, at *6–7 (S.D.N.Y. July 30, 2025)

(describing and applying burden-shifting framework), *report and recommendation adopted*,

2025 WL 2585521 (S.D.N.Y. Sept. 3, 2025).

Defendants argue that Plaintiff has not sustained a serious injury satisfying the "90/180 day" category under Section 5102(d).  That category requires the plaintiff to present evidence that (1) the collision caused "a medically determined injury or impairment of a non-permanent nature" and (2) such injury or impairment prevented the plaintiff "from performing substantially all of the material acts" which constitute the plaintiff's "usual and customary daily activities" for not fewer than 90 of the first 180 days following the injury or impairment.  N.Y. Insur. L. § 9102(d).  The plaintiff must show that he "has been curtailed from performing his usual activities to a great extent rather than some slight curtailment."  *Licari*, 441 N.E.2d at 1091. Defendants contend that Plaintiff cannot satisfy that test because in the approximately seven months from the date of the accident on March 13, 2023 to the date of his surgery on October 5, 2023, he did not take any time off from work related to his alleged injuries.  Dkt. No. 27 at 22; Dkt. No. 35 at 14; Dkt. No. 26-9 at 80:19-23.  In his opposition to summary judgment, Plaintiff admits that he missed only one-and-a-half weeks of work during the first 180 days after the accident, although he states that he was in pain when he worked and was significantly limited from his usual and customary activities.  Dkt. No. 32-1 ¶ 12.

Plaintiff's complaint alleges that, as a result of the collision, he suffered "[s]evere, painful and permanent bodily injuries," including "severe injury to the left knee," "severe injury to the cervical spine," and "severe injury to his right knee."  Dkt. No. 1-1 ¶ 38.  On this motion,

Defendants do not dispute that the evidence could establish that Plaintiff has suffered the "permanent loss of use of a body . . . member, function or system," the "permanent consequential limitation of use of a body organ or member," or the "significant limitation of use of a body function or system," each of which is also a category of serious injury under Section 9102(d). Plaintiff has proffered expert reports that he has suffered permanent injuries to his right knee and lumbar spine, Dkt. No. 32-5, and that he has suffered permanent injuries to his cervical and lumbar spine, Dkt. No. 32-6. Thus, the Court need not decide whether the evidence could satisfy the 90/180 category. Whether, in fact, Plaintiff suffered the injuries identified by the expert, whether they were permanent, and whether they were caused by the collision are issues for trial.

## CONCLUSION

The motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 25.

SO ORDERED.

Dated: April 10, 2026
      New York, New York

                    LEWIS J. LIMAN
              United States District Judge